Plaintiff's Name James Bowell
Inmate No. CDC# H04180
Address P.O. Box 3030
Susanville, CA 96127




IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

James Bowell,
(Name of Plaintiff)

vs.

R. Simpliciano,
R. McMurrey,
P. Maldonado,
J. DePond,
D. Hicks,
H. Vera,
D. Berna, et al.
(Names of all Defendants)

1:13-cv-01704-LJO-MJS
(Case Number)

First
AMENDED COMPLAINT

Civil Rights Act, 42 U.S.C. § 1983

Seeking $1.2 Million
Exemplary Damages

I. **Previous Lawsuits (list all other previous or pending lawsuits on back of this form)**:

A. Have you brought any other lawsuits while a prisoner? Yes ✓ No ___

B. If your answer to A is yes, how many? one
Describe previous or pending lawsuits in the space below.
(If more than one, use back of paper to continue outlining all lawsuits.)
Not Applicable.

1. Parties to previous lawsuit:

Plaintiff James Bowell

Defendants A. Diaz, B. Rodriguez, et al.

2. Court (if Federal Court, give name of District; if State Court, give name of County)
U.S. Eastern Dist. Ct.

3. Docket Number 1:11-cv-01350-MJS 4. Assigned Judge A.W. Ishii

5. Disposition (For example: Was the case dismissed? Was it appealed? Is it still pending?)
Conducting Discovery

6. Filing date (approx.) 8-15-11 7. Disposition date (approx.) Dec. 2014

RECEIVED
MAR 13 2014
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY DEPUTY CLERK

## II. Exhaustion of Administrative Remedies

A. Is there an inmate appeal or administrative remedy process available at your institution?

Yes ✓ No___

B. Have you filed an appeal or grievance concerning **ALL** of the facts contained in this complaint?

Yes ✓ No___

If your answer is no, explain why not______________________________

C. Is the process completed?

Yes ✓ If your answer is yes, briefly explain what happened at each level.
See Exhibit "A" p. 10-14; and Exhibit "B" p. 25-28.

No___ If your answer is no, explain why not.

**NOTICE:** Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). If there is an inmate appeal or administrative remedy process available at your institution, you may not file an action under Section 1983, or any other federal law, until you have first completed (exhausted) the process available at your institution. You are required to complete (exhaust) the inmate appeal or administrative remedy process before filing suit, regardless of the relief offered by the process. Booth v. Churner, 532 U.S. 731, 741 (2001); McKinney v. Carey, 311 F.3d 1198, 1999 (9th Cir. 2002). **Even if you are seeking only money damages and the inmate appeal or administrative remedy process does not provide money, you must exhaust the process before filing suit.** Booth, 532 U.S. at 734.

## III. Defendants

(In Item A below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use item B for the names, positions and places of employment of any additional defendants.)

A. Defendant R. Simpliciano, et al. is employed as Corcoran State Prison at P.O. Box 8800, Corcoran, CA 93212

B. Additional defendants

All of the defendants listed on page one are correctional officer's except sergeant D. Berna.

IV. **Statement of Claim**

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach extra sheets if necessary.)

Statement of Facts

While housed at Corcoran State Prison, shortly after 4-5-12 officer R. Simpliciano gave inmate Poe, CDC#G41520, my Chrono 128-G from Institutional Classification Committee fraudulently revealing that I am serving time for Rape by force and rape by threat, i.e., his intent was to maliciously and sadistically cause harm. See I/m Poe's Declaration dated 1-8-13 and CDC-128-G on p. 29, and 30, herewith.

(Continued on Next Page)

V. **Relief.**

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.)

Prayer

Wherefore, I respectfully pray for relief as follows:

1. Issue a declaratory judgment that the defendant's actions complained of herein violated my rights under the U.S. Constitution;
2. Award me monetary damages, compensatory and punitive, in an amount to be determined at trial;
3. Award me the costs of suit and reasonable attorney fees; and
4. Grant me such other and further relief as the court deems just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Date 3-10-14

Signature of Plaintiff James Bowell
James Bowell, Plaintiff

(revised 2/10/2006)

The motivating factor behind the defendant's actions, fraudulent rape allegations on CDC-128G dated 4-5-12. Evidence of retaliatory motive, attempting to have me murdered, a genuine issue of material fact.

On or around 10-15-12 C/O R. McMurrey at 9 PM forced my current cellmate that I was having no problem with to move and placed I/M Ortiz, CDC# G63698, into my housing location because I/M Ortiz was drunk and just had a cell fight with his cellmate hitting him with a hard coffee mug, i.e., immediately placing me into harms way. Aware of the risk on 10-31-12 C/O McMurrey and C/O P. Maldonado, Badge# 64498, ignored my plea for help, i.e., I was being threatened by I/M Ortiz who was demanding to read my CDC-128G.

I was in fear of being murdered in the cell 3B02-241, by I/M Ortiz who is a gang member and extremely dangerous. He was demanding that I move out of cell immediately, and I was attempting to explain the circumstances to both C/O R. McMurrey and C/O P. Maldonado at the cell door and they just walked away stating: handle your business.

I/M Ortiz was sitting down on the top bunk watching his television as I tapped on the cell door window hard enough for both officer's to hear that imminent danger existed. The window not installed properly cracked. At that point C/O R. McMurray hit his alarm, as premeditated, in order for defendant's to attack me unnecessarily using Excessive Physical Force.

I immediately cuffed up as instruced by prison guards J. DePond, H. Vera, D. Hicks, and D. Berna, through cell door food port. I was cuffed behind my back, and I/M Ortiz was just sitting on the top bunk. Immediately as the cell door was opened, as instructed I backed out of cell and was attacked by all four above listed defendant's.

Officer's J. Depond and H. Vera picked me up off my feet and repeatedly slammed my right shoulder up against a sharp piece of steel, part of the door frame. Thereafter, threw me face first onto the tier up against a steel bar while D. Hicks and D. Berna hit and kicked me trying to break my knee caps, i.e., dragging me down the tier and steps agonizingly clear across the prison yard to program office coffin type cage 2½' x 2½' x 6' to be stripped, searched and intimidated.

My injuries consisted of swollen contusion right forehead, three cuts on my right shoulder, left knee cap swollen, both of my legs cut from leg irons leaving an indentation. Those were the visible injuries. See Medical reports on p. 15-16.

Eye witness Declaration's of seven inmates to support my account of events, signed under the penalty of perjury. See p. 17-23.

At no time did I resist defendant's or provoke the use of force.

## A Cognizable Federal Claim

Facts demonstrating, further retaliation by defendants as a result of me filing a CDCR-602 grievance 11-18-12 against all seven defendant's for their Excessive Physical Force. See p. 31-34.

On 10-31-12 R. McMurrey and P. Maldonado let I/M Ortiz steal my television and part of my personal property, i.e., a deal was made to let I/M Ortiz, etal., his gang, to run drugs, make alcohol in their cells, and a green light to attack "R" suffix prisoner's. I recovered my television on 11-1-12.

On 1-29-13 I was attacked by I/M Patterson, CDC# V57371, as a result of the fraudulent CDC-128G 4-5-12, instructed by all seven defendants over time, to let I/M Patterson rob my cell taking part of my property $50 worth to hurt me.

C/o J. Huewe on 1-29-13 caught I/m Patterson stealing my television out of my assigned cell, implicating I/m Ortiz once again and his gang.

I was on the 3B yard facility 1-29-13 when I/m Patterson hit the side of my head with an extremely hard unbreakable coffee mug. This attack lasted for five minutes in front of gunner control and yard officer's, i.e., a green light to hit me via defendant's etal., Sergeant D. Berna's supervisory responsibility.

I did not know my cell was robbed for approximately three months. I was taken to Bakersfield emergency hospital with great bodily injuries, i.e., multiple right temporal, right facial contusions and abrasions, nondisplaced nasion fracture, right otitis ear canal tear, loss of hearing, my left eye has a black line now in my field of vision. See salient Hospital reports on p. 35-42.

## First Cause Of Action

The allegations contained herein and incorporated by reference violated my U.S. Const. rights under the 8th Amend. to be free from intimidation, abuse, and other violations of established law.

Defendant's actions caused serious harm to me as cruel and unusual punishment, physical injuries, emotional distress, suffering pain, in direct violation of Hudson V. McMillian, (1992) 112 S. Ct. 995, The use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though prisoner does not suffer serious injury. See Johnson V. Breeden, (2002) 280 F.3d at 1312, The jury returned a verdict in prisoner Johnson's favor against prison guards Breeden and Gomez, awarding Johnson #25,000 in compensatory damages, plus #45,000 in punitive damages. The Dist. Ct. granted $73,137.00 in Attorney fees and #12,131.80 in costs and expenses. See News Paper Articles on p. 43-44.

Defendant R. McMurrey, et al., conspired to place I/m Ortiz into my cell after he attacked his cellmate in direct violation of Lopez v. Smith, (2000) 203 F.3d 1122, Placing him with dangerous cellmate, and prisoner was harmed by prison guards' acts at Corcoran State Prison. Subsequently, prisoner was injured stating a colorable claim. See U.S. v. Garcia, (2003) 340 F.3d at 1014, Correctional officers at Pelican Bay were convicted of conspiring to organize stabbings, assaults, and intimidation of selected inmates by other inmates. Violating 18 U.S.C. § 241, in that they conspired to injure, oppress, threaten, or intimidate persons in the free exercise or enjoyment of rights or privileges secured to them by the Constitution or laws of the United States. (Implicating R. Simpliciano's motive and intent to harm me.) See p. 45.

Defendants knew or should have known that their conduct, attitudes and actions created an unreasonable risk of serious harm to me. Despite this knowledge, defendants failed to take reasonable steps to protect me and to ensure my Constitutional right to be free from cruel and unusual punishment, while in the defendant's care and custody at Corcoran. See Farmer v. Brennan, (1994) 114 S. Ct. 1970, Prison guards may be held liable under Eighth Amendment if they know that inmate faces substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it.

In the instant lawsuit, R. McMurrey and P. Maldonado, et al., showed "deliberate indifference" toward my personal safety, creating the intended "Excessive Physical Force" used by defendants on 10-31-12 at Corcoran on Holloween night.

## Second Cause Of Action

As "retaliation" the defendants negotiated a deal with I/m Patterson, V57371, to attack me, i.e., not charging him for stealing $50. cosmetic items and coffee from my cell in exchange for battering me, possibly to be shot on 1-29-13. I firmly

believe it was an attempted murder set up to silence me and my litigation as a direct and foreseeable consequence to the defendant's future pensions, if criminally prosecuted by the U.S. Attorney General's Office.

The state actor's took adverse action against me because of the fraudulent CDC-128G dated 4-5-12 and the grievance filed against defendant's on 11-18-12 at Corcoran State Prison. See Thaddeus-X v. Blatter, (1999) 175 F.3d 378, 383, Prison guards first threatened, and then took, steps to penalize inmate for litigative activities.

Evidence of retaliatory motive that, taken in light most favorable to me, presents a genuine issue of materail fact as to defendant's motivation, raising issues of suspect timing, and intent. sufficient to raise a right to relief above the speculative level.

I declare under penalty of perjury the foregoing is true and correct.

Dated: 3-10-14

Respectfully Submitted,

James Bowell
James Bowell, Plaintiff

# EXHIBIT A

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
OFFICE OF APPEALS
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

MAY 08 2013

# THIRD LEVEL APPEAL DECISION

Date:

In re: James Bowell, H04180
California State Prison, Corcoran
P.O. Box 8800
Corcoran, CA 93212-8800

TLR Case No.: 1208332 Local Log No.: COR-12-07753

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner R. Pimentel, Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I APPELLANT'S ARGUMENT:** It is the appellant's position that on October 31, 2012, Correctional Officer (CO) McMurrey and CO Maldonado failed to provide for his safety, and other staff used unnecessary and excessive force upon his (appellant's) person. The appellant contends that he informed staff that he and his cell partner were not compatible, but staff ignored this information which resulted in him being assaulted. The appellant alleges that CO Depond, CO Vera, and CO McMurrey attacked him for no reason and conspired to cover-up their misconduct. The appellant contends that the actions of the staff constitute misconduct. The appellant requests to exhaust administrative remedies, monetary compensation, that the staff be investigated, and that his property be replaced.

**II SECOND LEVEL'S DECISION:** The Second Level of Review (SLR) affirms that appropriate supervisory staff have been assigned to conduct an inquiry into this matter. Correctional Lieutenant M. Godina reviewed the submitted material and interviewed the involved parties. In order to determine the facts, the inquiry arising from this appeal included an interview of the appellant; interview of department employees; and review of current policies, laws, and procedures. Additional research may have included interviews of other inmate's or review of the appellant's central file. The SLR noted that all staff personnel matters are confidential in nature and the appellant will only be notified whether the action's of the staff were or were not in compliance with policy. The SLR found that the staff were in compliance with policy. The SLR partially granted the appeal in that an inquiry into the appellant's allegations was conducted.

**III THIRD LEVEL DECISION:** Appeal is denied.

**A. FINDINGS:** Upon review of the documentation submitted, it is determined that the appellant's allegations have been reviewed and evaluated by administrative staff and an inquiry has been completed at the SLR. In the event that staff misconduct was substantiated, the institution would take the appropriate course of action. All staff personnel matters are confidential in nature and not privy to the inquiries of other staff, the general public or the inmate population, and would not be released to the appellant. In this case, the institution has reported to the appellant that an inquiry was conducted and concluded that staff did not violate policy. Although the appellant has the right to submit an appeal as a staff complaint, the request for administrative action regarding staff, or the placement of documentation in a staff member's personnel file, or that the staff members be reprimanded is beyond the scope of the appeals process. The Third Level of Review (TLR) reviewed the confidential inquiry which was prepared by the SLR and finds that it adequately addresses the appellant's allegations. Therefore no relief is provided at the TLR.

**B. BASIS FOR THE DECISION:**
California Penal Code Section: 832.5, 832.7, 5058
California Code of Regulations, Title 15, Section: 3000, 3001, 3005, 3268, 3268.1, 3268.2, 3270, 3380, 3391

**C. ORDER:** No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR. If dissatisfied, the appellant may forward this issue to the California Victims Compensation and Government Claims Board, Government Claims Unit, P.O. Box 3035, Sacramento, CA 95812-3035, for further review.

R. PIMENTEL, Appeals Examiner
Office of Appeals

J. D. LOZANO, Chief
Office of Appeals

cc: Warden, COR
Appeals Coordinator, COR

Attachment E-1

State of California

Department of Corrections and Rehabilitation

# Memorandum

Date : December 13, 2012

To : Inmate Bowell, H04180
California State Prison Corcoran 3B05-134U

Subject: **STAFF COMPLAINT RESPONSE - APPEAL # CSPC-3-12-07753 *SECOND* LEVEL RESPONSE**

APPEAL ISSUE: On October 31, 2012, inmate Bowell, H04180, is alleging he was a victim of excessive use of force by Correctional Officers R. McMurrey, J. DePond and H. Vera. Correctional Lieutenant J. Keener instructed staff to lie on their reports in an attempt to justify injuries sustained to Bowell. Specifically, Bowell alleges he informed Correctional Officers P. Maldonado and McMurrey that inmate Ortiz, G63698, and he were not compatible as cellmates, in which Officer McMurrey ignored Bowell. The cell window was broken and Officer McMurrey activated his personal alarm. Responding staff arrived which consisted of Correctional Officers D. Hicks, Vera, DePond and Correctional Sergeant D. Berna. Bowell was placed in handcuffs and upon the Control Booth Officer R. Billings opening the cell door, Officers DePond, Vera and McMurrey assaulted Bowell. After the incident Lieutenant Keener instructed the Officers to lie on their reports in an attempt to justify the injuries sustained to Bowell.

All issues unrelated to the allegation of staff misconduct must be appealed separately and will not be addressed in this response. You do not exhaust administrative remedies on any unrelated issue not covered in this response or concerning any staff member not identified by you in this complaint. If you are unable to name all involved staff you may request assistance in establishing their identity.

**DETERMINATION OF ISSUE**: A review of the allegations of staff misconduct presented in the written complaint has been completed. Based upon this review your appeal is:

- Being processed as an Appeal Inquiry.

You were interviewed on December 11, 2012 by Correctional Lieutenant M. Godina and you stated on October 31, 2012 the incident occurred at California State Prison Corcoran Facility 3B Building 02 (3B02). When asked if he received any injuries, Bowell stated, "Yes, I had a contusion to my right forehead that was a ½ inch lump that stuck out ½ inch, I had three cuts to my right shoulder, my left knee cap was swollen and my legs were swollen where the leg irons left an indentation."

When asked how he received the injury, Bowell stated, "I was ordered to cuff up at the cell door while the door was shut. I complied and cuffed up, I then backed out of the cell. At that time Officers J. DePond and D. Hicks lifted me up and repeatedly slammed me into the steel door frame. I complied, and then they turned me around and slammed me to the ground. They dragged me off the tier and an officer intentionally stepped on my glasses, then they dragged me across the yard." Bowell stated he did receive appropriate medical treatment. Bowell stated the incident occurred due to him and his cellmate inmates Ortiz, G63698, were not compatible. Bowell stated he informed Officer Maldonado that inmate Ortiz asked to see his 128G and he needed to be moved out of the cell. Officer Maldonado informed Officer McMurrey of the situation and McMurrey ignored him. Bowell stated, "At this time I began to tap on the cell window and it cracked. Officer Maldonado activated his personal alarm." Bowell stated when the incident started, "I believe the two Officers that initiated the force were Officer J. DePond and D. Hicks, Sergeant Berna was there, I am not sure if Officers Maldonado and McMurrey were involved with the physical part of the altercation. There were a total of three to four officers using excessive force on me." When asked if he could provide any witness, he stated they are in my 602 appeal complaint and Officer Maldonado was there but he didn't write a report. Bowell stated he did not have any custody witnesses because they all lied on their reports anyways. "Lieutenant Keener didn't realize I was in the holding cage and I heard him tell the officer to write that he (Bowell) was resisting. He told the staff to lie on the reports." This concluded the interview.

**Your appeal is PARTIALLY GRANTED in that:**

- The **Appeal inquiry** is complete/ has been reviewed and all issues were adequately addressed.

The following witness(es) will be / were questioned: Sergeant D. Berna, Officer R. McMurrey, Officer D. DePond, Officer H. Vera, Officer D. Hicks, Officer Billings, inmate Penton, P73663, Inmate Brooks, P33948, Inmate Johnson, T78227, inmate Barnhart, V25993, inmate Ortiz, G63698. *The following witnesses were not interviewed,* Lieutenant J. Keener not available, inmate Jaurequi, P81642, not relevant, inmate Wilson, AI0732, not available. The following information will be / was reviewed as a result of your allegations of staff misconduct: (indicate documents, etc. that will be / or were reviewed).

Staff: ***did*** ☐ ***did not*** ☒ violate CDCR policy with respect to one or more of the issues appealed.

ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE.

- As such, the details of any inquiry will not be shared with staff, members of the public, or offender appellants.
- Although you have the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process. A variety of personnel actions may be initiated by the Department based upon the content of your complaint and the outcome of any investigation or inquiry conducted as a result of your complaint.
- Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process.

If you wish to appeal the decision and/or exhaust administrative remedies, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Secretary's/Third Level of Review. Once a decision has been rendered at the Third Level, administrative remedies will be considered exhausted.

Print: Lieutenant M. Godina Sign: [signature] Date: 12/13/12
Interviewer

Print: [signature] Sign: [signature] Date: 1/4/13
Reviewing Authority

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION

# MEDICAL REPORT OF INJURY OR UNUSUAL OCCURRENCE

| NAME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT (circle) | | DATE |
|---|---|---|---|---|
| CSP-COR | 3B2-241 | INJURY / USE OF FORCE / (UNUSUAL OCCURRENCE circled) | ON THE JOB INJURY / PRE AD/SEG ADMISSION | |

| THIS SECTION FOR INMATE ONLY | NAME LAST: Bowell | FIRST: James | CDC NUMBER: H04180 | HOUSING LOC.: 3B2-241 | NEW HOUSING LOC.: NA |
|---|---|---|---|---|---|
| THIS SECTION FOR STAFF ONLY | NAME LAST: NA | FIRST: | BADGE #: NA | RANK/CLASS: NA | ASSIGNMENT/RDOs: NA |
| THIS SECTION FOR VISITOR ONLY | NAME LAST: NA | FIRST: | MIDDLE: NA | DOB: NA | OCCUPATION: NA |
| NA | HOME ADDRESS | CITY: NA | STATE: NA | ZIP | HOME PHONE: NA |

| PLACE OF OCCURRENCE | DATE/TIME OF OCCURRENCE | NAME OF WITNESS(ES) |
|---|---|---|
| 3B- | 10/8/12 1832 | NA |

| TIME NOTIFIED | TIME SEEN | ESCORTED BY | MODE OF ARRIVAL (circle) | AGE | RACE | SEX |
|---|---|---|---|---|---|---|
| 1852 | 1855 | Custody | LITTER / WHEELCHAIR / (AMBULATORY circled) / ON SITE | 57 | White | M |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

"Cell mate ortiz demanded To see my CDC 128G or he will murder me inside The cell tonight".

| INJURIES FOUND? YES / NO | |
|---|---|
| Abrasion/Scratch | 1 |
| Active Bleeding | 2 |
| Broken Bone | 3 |
| Bruise/Discolored Area | 4 |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| O.C. Spray Area | 10 |
| Pain | 11 |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | 14 |
| Skin Flap | 15 |
| Swollen Area | 16 |
| Other ~~pain~~ | 17 |
| | 18 |
| | 19 |

Body diagram annotations: 16, 14; 11; 12, 9, 11; 14

| | |
|---|---|
| O.C. SPRAY EXPOSURE? | YES / NO |
| DECONTAMINATED? | YES / NO |
| Self-decontamination instructions given? | YES / NO |
| Refused decontamination? | YES / NO |
| Q 15 min. checks | |
| Staff issued exposure packet? | YES / NO |

| RN NOTIFIED/TIME | PHYSICIAN NOTIFIED/TIME |
|---|---|
| 1915 TTA RN Maria | NA |

TIME/DISPOSITION

1920 TTA

| REPORT COMPLETED BY/TITLE (PRINT AND SIGN) | BADGE # | RDOs |
|---|---|---|
| 15. Nwankwere Name LVN | [redacted] | [redacted] |

RECEIVED OCT 08 2012 EMERGENCY ROOM

*(Medical data is to be included in progress note or emergency care record filed in UHR)*

CDCR 7219 (Rev. 11/05) DISTRIBUTION: ORIGINAL - Custody ; CANARY - Inmate/Employee ; PINK - Health and Safety / RTW Coordinator (only work related injury)

California Correctional Health Care Services

Institution: CSP CORE **Encounter Form: Musculoskeletal Complaint (Non-Traumatic)**

Name: BOWEN, JAMES CDC# H04180 DOB: 1/15/55 Date/Time 11/6/12 1116

Fill in the blanks and check all that apply

**EDUCATION:**

- ☒ Assess patient's potential for understanding the health information to be provided.
- ☒ Provide patient education consistent with the assessment of the condition.
- ☒ Document the education provided and the patient's level of understanding on the nursing protocol encounter form.
- ☐ Refer patient to other resources as needed. Document all referrals on the nursing protocol encounter form.

**DISPOSITION:**

- Time released 1153
- ☒ Condition on release: STABLE
- ☒ Returned to housing unit
- ☐ Housing reassignment to:
- ☐ Referred for follow-up
  - ☐ Physician clinic ☐ RN clinic
- ☐ Referred to higher level of care: (specify)

Person/time contacted:
Time/Mode of transfer:
ERV contacted (time)
ERV arrived (time)

(S) PATIENT MENTIONED WAS TAPPING CELL DOOR WINDOW TO GET OFFICERS ATTENTION, WAS ATTACKED BY CELLY, WAS HIT BY CELLY IN RIB CHEST AREA, WHILE TAPPING WINDOW (WINDOW COVERED BY ACCIDENT. WAS IN FEAR FOR HIS SAFETY, CUSTODY CAME TO CELL TELLING HIM TO CUFF UP (COMPLIED) WHEN DOOR OPENED ABOUT 5 OFFICERS USED EXCESSIVE PHYSICAL FORCE SLAMMING TO WALL AGAINST CELL DOOR, AND PICKING HIM UP, AND SHOVING SHOULDER RIGHT AGAINST STEEL EDGE OF DOORWAY, CAUSING 3 INCH LACERATIONS TO (R) SHOULDER. SLAMMING FACE 1ST ON THE TIER (MENTIONED HE HAD A CONTUSION (R) FOREHEAD

AREA (SWELLING HAS GONE DOWN AS OF TODAY) HAS SEVERE H/A. PAIN ON (L) KNEE.

(O). (L) knee has some tenderness to (L) inner knee area. No swelling redness or deformity noted. Has good ROM; ~~hand grips~~ (R) shoulder has some dry scabbing area. Has good ROM of (R) shoulder & good radial pulses, hand grips. Has a discolored area to (R) chest area where his celly hit him & appears to be a healing bruising area. Is stable. and was seen in ER on the day of this altercation

List name(s) of RN Protocols used: MUSCULOSKELETAL.

Signature / Title

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: |
|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional time | ☐ P/I asked questions |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☒ P/I summed information |
| ☐ DPS ☐ DPH | ☐ Louder ☐ Slower | Please check one: |
| ☐ DNS ☐ DDP | ☒ Basic ☐ Transcribe | ☐ Not reached* ☒ Reached |
| | ☐ Other | *See chrono/notes |

4. Comments: 12.9 TABE SCORE = ~~[illegible]~~

FSP41-0040 (Rev.12/10)

**ENCOUNTER FORM: MUSCULOSKELETAL COMPLAINTS (NON-TRAUMATIC**
**CDCR XXXX**

7/26/2011



Saved 2013-01-09T20:11:53Z

Declaration

ON 10-31-12 at 1832 Hours at Carcoran State Prison Facility 3B I I/m Barnhart, CDC # V25993 overheard I/m Ortiz, CDC # G63698 in cell 3B-241 demand to read I/m Bowell's CDC-128G reason why Bowell, H04180, is in prison, i.e., threats were made via I/m Ortiz toward I/m Bowell. C/o R. McMurrey and C/o P. Maldonado were both told there was a problem but refused to separate I/m Ortiz and I/m Bowell.

I/m Bowell was is fear for his personal safety and tapped on cell door window to get help and the window cracked. C/o R. McMurrey hit his alarm and officer's J. Depond, H. Vera, D. Hicks, Sgt. D. Berna, et al., placed I/m Bowell in handcuffs through celldoor food port. Once the door was opened via the Control booth officer R. Billings officer's J. Depond and H. Vera slammed I/m Bowell up againt the steal door frame and then face first to the ground on second tier.

I/m Bowell was not resisting, kicking, nor moving violently from side to side as the officer's attacked and used excessive physical force. I/m Bowell was placed in leg restraints and could not even walk because they were tight, i.e., as the officer's left carrying I/m Bowell away one officer intentionally stepped on Bowell's glasses shattering them on the tier.

It was a reckless disregard for I/m Bowell's safety, failure to protect from harm, as Bowell was attempting to obtain a cellmove with a compatible cellmate that is not dangerous or threatening, safety factors do exist.

I declare under the penalty of perjury that the following is true and correct to the best of my belief and understanding.

Dated: 11-16-2012

[signature]
I/m Barnhart, V-25993, 3B-240

Declaration

At Corcoran State Prison, Facility 3B on 10-31-12 third watch, I overheard I/m Bowell H04180 in cell 3B02-241 tell correctional officer P. Maldonado that he was in fear for his safety living with I/m Ortiz G63698, i.e., they were not compatible and needed to be separated immediately, there was a problem.

C/o P. Maldonado yelled down to C/o R. McMurrey that was in the office and stated: You need to cuff inmate Bowell up and remove him from his cell for his safety.

C/o R. McMurrey ignored the problem until Bowell cracked the cell door window in fear of his life and safety. I firmly believe resulting in unnecessary Excessive Physical Force and injuries to prisoner Bowell via officer's J. DePond, D. Hicks, Sergeant D. Berna, et al., that was unlawfully created via C/o P. Maldonado and R. McMurrey's failure to protect prisoner Bowell from harm.

I hereby declare under the penalty of perjury that the above statement is true and correct.

Dated: 1-15-13

[signature]
I/m Jose Passalaqua, G63887

[signature]
I/m Barnhart, V-25993, 3B-240

Declaration

On 10-31-12 at approximately 6:30PM I heard and observed I/M Bowell, H04180, in cell 3B02-241 tap his cup on cell door window to get the assistance of C/O R. McMurrey and C/O P. Maldonado, i.e., the cell door window cracked.

Numerous officer's arrived at celldoor 3B-241 I/M Bowell cuffed up behind his back with the door closed, when door was opened the prison guards picked I/M Bowell up and pushed him against the steel of door frame and then slammed I/M Bowell face first onto the tier using unnecessary force beating and dragging I/M Bowell out of the building with at least five officer's, i.e., I/M Bowell's leg's were chained unable to walk.

The officer's attacked I/M Bowell who never resisted the prison guards, it appeared as if I/M Bowell was in compliance, by cuffing up and backing out of the cell, as guards for no reason used excessive physical force causing injury to I/M Bowell only.

I declare under the penalty of perjury that the above statement is true and correct to the best of my understanding and belief.

Dated: 11/4/2012 Sign: Edward A. Wilson #AI0732
I/M Eddie Wilson, AI0732, 126

Dated: 11-4-2012 Sign: [signature] #P73663
I/M Anthony Penton, 127

Dated: 11-17-12 Sign: [signature]
I/M David J Brooks P-33948, 127

11/17/12 [signature] T-78227, 239
Johnson T-78227

Nov. 5, 2012

To whom it may concern, I I/m Edward A. Wilson CDC # AI-0732 am a witness that the Correctional officers in Corcoran STATE prison, Facility 3B, Building 02, used unneccesary exessive force while apprehending I/M-Bowell. On Oct. 31, 2012 at approximately 8pm-9pm I/m-Bowell was attempting to get the Correctional officers attention. Apparently I/m Bowell was tapping his cup against the window & the window cracked. At that time officer Mcmurry (who was the correctional officer on the floor) activated his personal alarm & the facility 3B correctional officers responded. At that time the correctional officers used unneccesary excessive force to extract I/m Bowell out of cell # 241 although he was in total compliance. I observed them to cause injury only to I/m-Bowell as they banged his head against the railing & basically dragged him down the stairs being the fact that I/m Bowell was unable to walk due to his legs being zip-tied. I I/m-Edward A. Wilson # AI-0732 declare under the penalty of perjury that the above statement is correct & true.

Edward A. Wilson # AI-0732

Declaration

On 10-31-12 at Corcoran State Prison, Facility 3B, C/o R. McMurrey and C/o P. Maldonado floor officer's for Building 2 had I/m Ortiz, G63698, roll I/m Bowell's personal property up after the prison guards used Excessive Physical Force on I/m Bowell, i.e., retaliation is my firm belief.

Inmate Ortiz did not remove Bowell's television during property, stole it, and it was recovered on 11-1-12 in another inmates cell with I/m Bowell's Name and Number removed with another name inscribed onto the TV, i.e., C/o R. McMurrey, et al., let I/m Ortiz steal I/m Bowell's television never doing a property inventory. Bowell's legal material was just placed into a closet on the top tier.

C/o R. McMurrey went into cell 3B-224 on 11-1-12 and recovered the television in question giving it back to Bowell immediately. However, if Bowell did not return to 3B-02 the TV would not have been returned. C/o R. McMurrey and C/o P. Maldanado were responsible for Bowell's property roll up and failed to do their job.

Signed under the penalty of perjury as being true and correct. (I/m Craig CDC# 48391 had Bowell's TV.)

Dated: 11-17-2012

[signature]
I/m S. Barnhart, V-25993, 3B-240

I I/m Jauregui, Daniel # P81642 upon arrival to 3B02-130 observed multiple areas of Bruising on his (R) Shoulder, Facial area Right upper Forehead and Parralel Abrasion / cuts on upper Right Clavicle and shoulder area! To my eye they appear to be consistant with some type of physical altercation and or assualt on Him!

I was not present when wounds occured, nor Am I knowlegdable of the incident, only to the fact that he had fresh cuts & Bruising when I was housed with Him! I/m James Bowell # H04180

I declare this to be true in my own words and writing under penalty of perjury and will attest to this if ever asked!

Signed [signature]
11-1-12

Daniel Efrain Jauregui
3B02-130 Low # P-81642.

# Declaration

On 11-21-12 at Corcoran State Prison, 3B Facility Building 2, C/o D. Hicks, C/o J. DePond, et al., searced cell 3B02-130 leaving inmate Bowell's H04180 legal papers, transcripts, strewn all over the floor, the bunk, and lockers, completely disorganized in a retaliatory disrespectful manner.

Upon entering cell I/m Bowell inquired as to the reason for this search and C/o D. Hicks responded by stating: Are you threatening me at which point I/m Bowell stated: I will see you in court.

I declare under the penalty of perjury the following is true and correct to the best of my understanding and belief.

Dated: 11-21-12

[signature] 11/21/12
I/m Daniel Jauregui, P81642

# EXHIBIT B

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
OFFICE OF APPEALS
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

# THIRD LEVEL APPEAL DECISION

Date: JUL 02 2013

In re: James Bowell, H04180
California State Prison, Corcoran
P.O. Box 8800
Corcoran, CA 93212-8800

TLR Case No.: 1211852 Local Log No.: COR-13-01294

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner R. Pimentel, Captain. All submitted documentation and supporting arguments of the parties have been considered.

I **APPELLANT'S ARGUMENT:** It is the appellant's position that staff failed to properly protect him and disregarded his safety. The appellant alleges that he was attacked by a group of inmates which resulted in him receiving serious injuries. The appellant alleges that the group of inmates had been making deals with custody staff to engage in illicit activities and assault other inmates based upon their commitment offenses. The appellant alleges that staff gave a copy of his CDC Form 128-G, Classification Chrono to another inmate which listed his rape conviction. The appellant contends that staff's actions constitute misconduct. The appellant requests that an investigation be conducted, monetary compensation, that the staff be criminally charged, that his case factors be corrected, and that staff acknowledge that they intended to harm him.

II **SECOND LEVEL'S DECISION:** The Second Level of Review (SLR) affirms that appropriate supervisory staff have been assigned to conduct an inquiry into this matter. Correctional Lieutenant M. Godina reviewed the submitted material and interviewed the involved parties. In order to determine the facts, the inquiry arising from this appeal included an interview of the appellant; interview of department employees; and review of current policies, laws, and procedures. Additional research may have included interviews of other inmate's or review of the appellant's central file. The SLR noted that all staff personnel matters are confidential in nature and the appellant will only be notified whether the actions of staff were or were not in compliance with policy. The SLR found that the staff members did not violate policy. The SLR partially granted the appeal in that an inquiry was conducted.

III **THIRD LEVEL DECISION:** Appeal is denied.

A. **FINDINGS:** Upon review of the documentation submitted, it is determined that the appellant's allegations have been reviewed and evaluated by administrative staff and an inquiry has been completed at the SLR. In the event that staff conduct was not in compliance with policy, the institution would take the appropriate course of action. All staff personnel matters are confidential in nature and not privy to the inquiries of other staff, the general public or the inmate population, and would not be released to the appellant. In this case, the institution has reported to the appellant that an inquiry was conducted and the actions of the staff member were determined to be in compliance with policy. Although the appellant has the right to submit an appeal as a staff complaint, the request for administrative action regarding staff, or the placement of documentation in a staff member's personnel file, or that the staff members be reprimanded is beyond the scope of the appeals process. The Third Level of Review (TLR) reviewed the findings of the confidential inquiry and concurs with the SLR findings that the actions of the staff members were in compliance with policy. Therefore no relief is provided at the TLR.

The appellant has added new issues and requests to his appeal. The additional requested action is not addressed herein as it is not appropriate to expand the appeal beyond the initial problem and the initially requested action (CDC Form 602, Inmate/Parolee Appeal Form, Sections A and B).

B. **BASIS FOR THE DECISION:**
California Penal Code Section: 832.5, 832.7, 5058
California Code of Regulations, Title 15, Section: 3000, 3001, 3004, 3270, 3286, 3380, 3391

C. **ORDER:** No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR. If dissatisfied, the appellant may forward this issue to the California Victims Compensation and Government Claims Board, Government Claims Unit, P.O. Box 3035, Sacramento, CA 95812-3035, for further review.

R. PIMENTEL, Appeals Examiner
Office of Appeals

for M. Dodge
J. D. LOZANO, Chief
Office of Appeals

cc: Warden, COR
Appeals Coordinator, COR

# Memorandum

Date : March 27, 2013

To : Bowell, H-04180
CSP-Corcoran, ASU1-177L

Subject: **STAFF COMPLAINT RESPONSE - APPEAL # CSPC-07-13-01294 *SECOND* LEVEL RESPONSE**

APPEAL ISSUE: You allege you were attacked by order of a gang of prisoners making deals with correctional officers to leave their cells alone, let them run drugs, make alcohol and attack certain inmates with "R" suffixes. Specifically, you allege Officer Simpliciano gave your CDCR-128G (Classification Chrono) which states that you were arrested for "Rape by Force and Fear" to inmate Poe, G-41520, 3B03-119L. You also state that you believe that this is the reason you were assaulted by inmate Patterson, V-57371. You made statements that the following staff is conspiring to have possibly murdered; Sergeant D. Berna, Officers J. DePond, D. Hicks, H. Vera, R. Meraz, M. Cote, and A. Capano.

All issues unrelated to the allegation of staff misconduct must be appealed separately and will not be addressed in this response. You do not exhaust administrative remedies on any unrelated issue not covered in this response or concerning any staff member not identified by you in this complaint. If you are unable to name all involved staff you may request assistance in establishing their identity.

**DETERMINATION OF ISSUE**: A review of the allegations of staff misconduct presented in the written complaint has been completed. Based upon this review your appeal is:

- Being processed as a Staff Compliant.

You were interviewed on March 11, 2013, by LT M. Godina and you stated all those officers you mentioned in the appeal are conspiring to kill you and you had nothing to add and everything was addressed in the inmate appeal (602).

**Your appeal is PARTIALLY GRANTED in that:**

- The **Appeal inquiry** is complete and has been reviewed and all issues were adequately addressed.

The following witnesses were questioned: inmate Poe, G-41520, inmate Patterson, V-57371.

| Staff: ***did*** ☐ ***did not*** ☒ violate CDCR policy with respect to one or more of the issues appealed. |
|---|

ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE.

- As such, the details of any inquiry will not be shared with staff, members of the public, or offender appellants.
- Although you have the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process. A variety of personnel actions may be initiated by the Department based upon the content of your complaint and the outcome of any investigation or inquiry conducted as a result of your complaint.
- Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process.

If you wish to appeal the decision and/or exhaust administrative remedies, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Secretary's/Third Level of Review. Once a decision has been rendered at the Third Level, administrative remedies will be considered exhausted.

Print: LT A. Delos Santos Sign: [signature] Date: 3/27/2013
Interviewer

Print: [signature] Sign: [signature] Date: 4/18/13
Hiring Authority

# Declaration

At Corcoran State Prison, Facility 3B03-119 I was given I/M Bowell's H04180, CDC-128G Classification Chrono while institutional mail was delivered to cell on or around 4-5-12, i.e., all cell doors contain the inmates name on each cell door who occupies individual cells. Prisoner Bowell had been moved to Facility 3C and the above dated CDC-128G was given to me in error containing confidential data.

I hereby declare under the penalty of perjury that the above statement is true and correct, officer R. Simpliciano gave me CDC-128G to harm I/M Bowell is my belief.

Dated: 1/8/13

Christopher Poe

I/M Poe, CDC#G41520, 3B03-119

CALIFORNIA DEPARTMENT OF CORRECTIONS

**NAME: BOWELL, JAMES** **CDC #: H04180** **HOUSING: 03B003 1-119001L**

## COMMITTEE ACTION SUMMARY

INITIAL REVIEW: RELEASE TO COR-IV SNY FACILITY 3B; D/C W/SAFETY; EST CUSTODY @ CLOBR; WG/PG A2B; PLACE ON G01B/BYSS; FD FHC; PSYCH CLEAR; TABE-12.9; U.O.F POLICY & APPEAL RIGHTS WERE EXPLAINED; EFF COMM EST; DDP-NCF; DPP-N/A; IHC-RE. PC 2933: INELIGIBLE PC 2933.05: INELIGIBLE. CSRA: IL.

## COMMITTEE'S COMMENTS

Inmate **BOWELL, H04180** refused to appear, therefore, the case was reviewed in absentia before COR 3B UCC on today's date for his INITIAL REVIEW. S was provided 72 hours advanced notification. S's Confidential file, CDCR 840, CDCR 127, CDCR 812's have been reviewed and updated.

**COMMITTEE NOTES:** S is a WHI, 56 year-old, 4th termer, received to CDCR on 3/19/2012, from Los Angeles County for the Commitment Offense of Failure to register as a sex offender, serving a total term of 25 TO LIFE. S arrived at CSP-Corcoran on 3/19/2012, from KVSP. S's transfer was non adverse. Per CDCR 128G dated 2/17/12, S is COR-IV SNY endorsed, consistent with classification score and case factors. Per CDCR 128G dated 4/4/01, S requested SNY placement, due to enemy/safety concerns and he cannot safely house in GP.

**COMMITTEE ACTION:** Based on a review of S's case factors, Committee elects to release to COR-IV SNY Facility 3B. Establish Custody at CLOBR and WG/PG A2B. Place on G01B/BYSS, waiting list.

**CELL STATUS REVIEW:** Committee has reviewed S's housing status and has determined that S does not have significant history of in cell predatory/assaultive behavior towards cellmates. Committee elects to place S on D/C with compatible inmate with SAFETY CONCERNS. S meets departmental D/C policy. UCC elects to establish S's IHC at RE.

**WORK & HOUSING RESTRICTIONS:** S's medical status has been reviewed (128C-3, 7410). S is Full Duty-Food Handling Clear

**EFFECTIVE COMMUNICATION:** DECS reviewed and no accommodations required. Simple English in a slow and clear manner was utilized to effectively communicate with S. S repeated in his own words the reason and recommendation utilizing simple English and stated he agreed.

**INMATE COMMENTS/PARTICIPATION:** (IN-ABSENTIA) A pre-committee conference was conducted with S to explain the purpose and recommendation to the Unit Classification Committee (UCC). During the conference CCI A. Nunez explained the reason for committee and the recommended committee action. S stated he wants S/C due to not being compatible. S will be advised of Committee's decision and his right to appeal Committee's decision via the CDCR 128G.

## INMATE CASE FACTORS

| RELEASE DATE | ETHNICITY | DOB | BPT TYPE | NEXT BPT DATE | DATE REC'D | COUNTY OF COMMIT | SENT. LENGTH |
|---|---|---|---|---|---|---|---|
| LIFE 8/20/2023 | WHI | 11/5/1955 | IPCH | 2/2022 | 3/19/2012 | LOS ANGELES | 25 TO LIFE |
| **PLACEMENT SCORE** | **LEVEL** | **CUSTODY** | **RECLASS** | **TB CODE - DATE** | **PSYCH** | **PSYCH DATE OF 128C** | **RGPL** |
| 196 | IV | CLOBR | 1/30/2013 | 22 - 4/20/2011 | CLEAR | 11/14/2011 | 12.9 |
| **DDP LEVEL** | **DDP DATE** | **DPP** | **DPP DATE** | **MEDICAL STATUS** | | **MED. STAT. 128C1 DATE** | **CII#** |
| NCF | 9/18/2000 | N/A | N/A | FD | | 8/13/10 | H04629258 |

**COMMITMENT OFFENSE:** Failure to register as a sex offender

**RECEIVED FROM:** KVSP - CONVERSION

**AFFILIATION** NONE NOTED (SNY)

**ARSON HX:** NONE NOTED IN C-FILE AND S CLAIMS NONE.

**SEX HX:** Rape by force, Rape by Threat

**ESCAPE HX:** Escape without force from CCI 6/13/77, ESC affixed UCC 7/21/10.

**HOLDS/POTENTIAL HOLDS:** (Clear)

**MDO CRITERIA:** S does not meet criteria for MDO referral.

**812:** (Noted) ENEMIES

**812C:** (Noted) ENEMIES/CONFIDENTIAL INFO

| **CAMP:** (CAMP-Ineligible)- LIF-VIO-SEX | **MSF:** (MSF-Ineligible)- LIF-VIO-SEX | **CCF:** (CCF-Ineligible)- LIF-VIO-SEX | **MCCF:** (MCCF-Ineligible)- LIF-VIO-SEX |
|---|---|---|---|

## COMMITTEE MEMBERS

| CHAIRPERSON | MEMBERS | RECORDER |
|---|---|---|
| *G. Rangel, Capt (A)* | *J. Bugarin, CCII (A)* | *A. Nunez, CCI (A)* |

Committee Date: 4/5/12

**COR-IV SNY UCC**

30-

CSP-CORCORAN

Typed By: APN - Distribution: C-File & Inmate

Classification Chrono CDC 128G (Rev: 5/01)

TABE - 12.9 GP SNY NCF

# OUT TO MEDICAL RETURN ENCOUNTER

1. Disability Code: ☐TABE score ≤ 4.0 ☐DPH ☐DPV ☐LD ☐DPS ☐DNH ☐DNS ☐DDP

2. Accommodation: ☑Additional time ☐Equipment ☐SLI ☐Louder ☑Slower ☑Basic ☐Transcribe ☐Other*

3. Effective Communication: ☑P/I asked questions ☑P/I summarized information. Please check one: ☐Not reached* ☑Reached *See chrono/notes

| DATE | TIME | |
|---|---|---|
| 1-31-13 | 2220 | **1. REASON FOR OUTSIDE VISIT:** ASSAULT |
| | | ☐ Imaging ☐ Surgery ☐ Hospitalization ☑ ER Return ☐ Other reason (please specify): |
| | | ☑ Consultation Diagnosis/Findings: NONDISPLACED NASION FRACTURE, RIGHT OTITIS |
| | | Dictation Received? ☑ Yes ☐ No OTMR Documents Reviewed ☑ Yes ☐ No |
| | | Original RFS and all documents stay in envelope and sent to: ☐ Offsite/UM Nurse ☐ GACH with I/P |
| | | **2. NURSING ASSESSMENT:** |
| | | S) "I WAS ASSAULTED BY INMATE PATTERSON" CDC# V-57371 |
| | | |
| | | |
| | | O) B/P: 126/75 HR: 86 RR: 16 Temp: 97.9° O2Sat: 99% RA Scale Weight: 148 Pain Level: |
| | | Focused Physical Assessment (based on patient chief complaint/consultation diagnosis/hospital DC status): |
| | | MULTIPLE RIGHT TEMPORAL, RIGHT FACIAL CONTUSIONS AND ABRASIONS, |
| | | NONDISPLACED NASION FRACTURE, RIGHT OTITIS |
| | | |
| | | Wound Description: (Location, measurement, appearance, drainage) |
| | | BRUISED RIGHT EYE, SMALL HEALING ABRASIONS TO RIGHT TEMPORAL AREA |
| | | AND TO RT/LT KNEES |
| | | A) Knowledge deficit related to plan of care |
| | | Other: |
| | | |
| | | |
| | | P) Consultation Recommendation (List): SEE IN CLINIC IN ONE WEEK IN OUR FACILITY |
| | | PER DR. KIT ENT OR TELE SYSTEM IF NEEDED |
| | | |
| | | **Discussed with Dr.** ☐ Yes ☑ No **Date:** **Time:** ☐ **Phone** ☐ **FTF** |
| | | New Orders? ☐ Yes ☑ No |
| | | E) Discharge plan discussed with Inmate Patient (check): |
| | | ☐ Medication Plan ☐ Treatment Plan ☑ Follow-Up Plan ☐ Diet Plan ☐ Activity Plan |
| | | |
| | | |
| | | Explained to IM to: (circle) return/call for medical help/ submit 7362 for increased pain, bleeding, fever, difficulty breathing, signs of infection or other concern. ☑ Yes ☐ No |
| | | Plan of Care Discussed with I/P ☑ Yes ☐ No Understanding Reached ☑ Yes ☐ No |
| | | ☑ Inmate Patient summarized information ☑ Inmate Patient asked Questions |
| | | |
| | | Discharge time 2250 to AD-SEG via AMBULATORY with CUSTODY |

| | |
|---|---|
| **INSTITUTION** CSP-CORCORAN | **HOUSING UNIT** 3B05-149 L |
| | NAME (LAST, FIRST), CDC NUMBER, DOB |
| **OTM RN PRINTED NAME:** J. JOHNSON RN | **NAME:** BOWELL, JAMES |
| | **CDC #:** H-04180 |
| **OTM RN SIGNATURE:** J. Johnson RN | **DOB:** 11/5/1955 |

**INTERDISCIPLINARY PROGRESS NOTE**

CDC 7230 (REV 09/2012) STATE OF CALIFORNIA DEPARTMENT OF CORRECTIONS



Saved 2013-02-14T17:20:59Z

DEPARTMENT OF CORRECTIONS AND REHABILITATION

# MEDICAL REPORT OF INJURY OR UNUSUAL OCCURRENCE

| NAME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT (circle) | | | DATE |
|---|---|---|---|---|---|
| CSP-Cor | 3B | USE OF FORCE | (INJURY) UNUSUAL OCCURRENCE | ON THE JOB INJURY / PRE-AD/SEG ADMISSION | 4/29/13 |

| | NAME LAST | FIRST | CDC NUMBER | HOUSING LOC. | NEW HOUSING LOC. |
|---|---|---|---|---|---|
| THIS SECTION FOR INMATE ONLY | Bowell | James | H04180 | 5-149 | NA |

| | NAME LAST | FIRST | BADGE # | RANK/CLASS | ASSIGNMENT/RDOs |
|---|---|---|---|---|---|
| THIS SECTION FOR STAFF ONLY | NA | NA | NA | NA | NA |

| | NAME LAST | FIRST | MIDDLE | DOB | OCCUPATION |
|---|---|---|---|---|---|
| THIS SECTION FOR VISITOR ONLY | NA | NA | NA | NA | NA |
| | HOME ADDRESS: NA | CITY: NA | STATE: NA | ZIP: NA | HOME PHONE: NA |

| PLACE OF OCCURRENCE | DATE/TIME OF OCCURRENCE | NAME OF WITNESS(ES) |
|---|---|---|
| 3B | 4/29/13 1315 | Custody |

| TIME NOTIFIED | TIME SEEN | ESCORTED BY | MODE OF ARRIVAL (circle) | AGE | RACE | SEX |
|---|---|---|---|---|---|---|
| 1315 | 1330 | Custody | LITTER / WHEELCHAIR / (AMBULATORY) / ON SITE | | W | M |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

"He hit me with a weapon" I can't hear

INJURIES FOUND? (YES) / NO

| Injury | No. |
|---|---|
| Abrasion/Scratch | (1) |
| Active Bleeding | (2) |
| Broken Bone | 3 |
| Bruise/Discolored Area | (4) |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | (7) |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | (9) |
| O.C. Spray Area | 10 |
| Pain | (11) |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | (14) |
| Skin Flap | 15 |
| Swollen Area | (16) |
| Other | 17 |
| | 18 |
| | 19 |

Diagram annotations: 1, 9, 11, 16, 14, 4, 7, 1; Loss Hear; 2

O.C. SPRAY EXPOSURE? YES / (NO)

DECONTAMINATED? YES / (NO)

Self-decontamination instructions given? YES / (NO)

Refused decontamination? YES / (NO)

Q 15 min. checks

Staff issued exposure packet? YES / (NO)

| RN NOTIFIED/TIME | PHYSICIAN NOTIFIED/TIME |
|---|---|
| 1330 Dackermann | NA |

TIME/DISPOSITION: 1330 To ACH via ERV

| REPORT COMPLETED BY/TITLE (PRINT AND SIGN) | BADGE # | RDO |
|---|---|---|
| M Judy LVN [signature] | 20048 / 68 | F |

(Medical data is to be included in progress note or emergency care record filed in UHR)

CDCR 7219 (Rev. 11/05) DISTRIBUTION: ORIGINAL - Custody CANARY - Inmate/Employee PINK - Health and Safety / RTW Coordi

# TRIAGE & TREATMENT SERVICES FLOW SHEET

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (Rev 11/12)

Date: 1/29/13 Time In: 1338 Time Out: 1530

Category: ☐ Non-Urgent ☑ Urgent ☐ Emergent

Allergies: NKA

eUHR Reviewed ☑ Yes ☐ No MAR Reviewed ☑ Yes ☐ No DEC Reviewed ☑ Yes ☐ No

| NOTIFICATION TO: | TIME | NOTIFIED BY: | ARRIVAL TIME | DISCHARGE TIME | PATIENT DISPOSITION | | DISCHARGE CONDITION |
|---|---|---|---|---|---|---|---|
| ☑ TTA | 1329 | Jung LVN | 1338 | 1530 | ☐ RTC | ☐ Coroner | ☑ Ambulatory ☐ W/C ☐ Gurney |
| ☐ Watch Commander | | | | XXXXXXXXXX | ☐ OHU Admit | ☑ Community Hospital | ☑ Stable ☐ Unstable |
| ☐ EMS | | | | | ☐ CTC Admit | ☑ State Vehicle | ☐ Critical Condition |
| ☐ PCP ☐ Psych | | | | XXXXXXXXXX | ☐ GACH Admit | ☐ Ambulance | Admit To: Mercy |
| ☐ Supervisor | | | | XXXXXXXXXX | ☐ MH Referral | Transport Code ☐ 2 ☐ 3 | ☐ Deceased Time: |
| Chief Complaint: "I was dizzy I might have passed out" | | | | | Incident Time | Incident Location 3B05-149 | Mode Of Arrival ☑ Ambulatory ☐ W/C ☐ Gurney |

| NEUROLOGICAL | RESPIRATORY | INTEGUMENTARY | EYES, EARS, NOSE, THROAT | GASTRO-URINARY | GASTRO-INTESTINAL |
|---|---|---|---|---|---|
| ☑ Alert ☑ PERL | ☑ Equal ☑ Clear | ☐ Pink / Normal | ☐ No Complaints | ☑ No Complaints | ☑ No Complaints |
| ☑ Oriented x ☐ 1 ☐ 2 ☑ 3 | ☑ Normal ☐ Rapid | ☐ Warm ☐ Dry | ☑ Eye ☑ Right ☑ Left | ☐ Urgency | ☐ Nausea ☐ Vomiting |
| ☐ Confused | ☐ Deep ☐ Cough | ☐ Moist / Diaphoretic | ☐ Ear ☐ Right ☑ Left | ☐ Frequency | ☐ Diarrhea ☐ Constipation |
| ☐ Decreased LOC | ☐ Diminished | ☐ Cyanotic ☐ Pale | ☐ Nose ☐ Throat | ☐ Retention | ☐ Rebound ☐ Guarding |
| ☐ Unconscious | ☐ Crackles | ☐ Jaundiced | ☐ Foreign Body | ☐ Hematuria | ☐ Tenderness |
| ☑ Headache | ☐ Wheezes | ☐ Cool ☐ Mottled | ☐ Pain ☑ Redness Swollen | ☐ Bladder Incontinence | ☐ Bowel Incontinence |
| ☐ Dizziness | ☐ Shallow | ☐ Flushed ☐ Hot | ☐ Drainage | ☐ Pain On Urination | Bowel Sounds: ☐ 1 ☐ 2 ☐ 3 ☑ 4 |
| ☐ ETOH Odor | ☐ Hemoptysis | ☐ Ashen ☐ Cold | VISUAL ACUITY | ☐ Urethral Discharge | ☐ Hypo ☐ Hyper ☐ Normal ☐ Absent |
| Grips R S L S | ☐ Nasal Flaring | ☐ Rash: | Right Eye / | ☐ Flank Pain ☐ R ☐ L | ☐ Melena ☐ Rectal Bleed |
| S=Strong W=Weak | ☐ Labored | Last Tetanus: | Left Eye / | | ☐ Hematemesis |

| TRAUMA | PSYCH | MUSCULOSKELETAL | ☐ Corrected With Glasses | CARDIAC | ERV RESPONSE TIME |
|---|---|---|---|---|---|
| ☐ Denies | Cooperative ☐ Y ☑ N | ☐ No Complaints | CIRCULATION | ☑ No Complaints | Location: Time: |
| Mechanism Of Injury | ☐ Anxious | ☐ Muscle Cramps | Pulse RA LA RL LL | ☐ Tightness | Dispatch Time 1329 |
| ☐ Gun Shot Wound | ☐ Combative | ☐ Joint Pain | Present | ☐ Pressure | Time At Scene 1332 |
| ☐ Sports Injury | ☐ Homicidal | ☐ Low Back Pain | Quality | ☐ Palpitations | Time Departed 1336 |
| ☐ On The Job Injury | ☐ Hallucinations | ☐ Flank Pain ☐ R ☐ L | Capillary Refill Time | ☐ Neck Vein Distention | Arrived Back At ACH 1337 |
| ☑ Altercation | ☐ Suicidal Ideation | ☐ Numbness / Tingling | ☐ Brisk <3 Sec ☐ Delayed | ☐ Tracheal Deviation | Comment: |
| ☐ Fall ☐ Burn | ☐ Suicide Gesture | ☐ Muscle Spasms | | ☐ Chest Wall Pain | |

## GLASGOW COMA SCALE

| | TIME: | 1338 | |
|---|---|---|---|
| Eye Opening Response | Spontaneous | (4) | 4 |
| | To Voice | 3 | 3 |
| | To Pain | 2 | 2 |
| | None | 1 | 1 |
| Verbal Response | Oriented | (5) | 5 |
| | Confused | 4 | 4 |
| | Inappropriate Words | 3 | 3 |
| | Incomprehensible | 2 | 2 |
| | None | 1 | 1 |
| Motor Response | Obeys Commands | (6) | 6 |
| | Localizes Pain | 5 | 5 |
| | Withdraws From Pain | 4 | 4 |
| | Abnormal Flexion | 3 | 3 |
| | Abnormal Extension | 2 | 2 |
| | No Motor Response | 1 | 1 |
| Glasgow Coma Scale (Score) | | 15 | |

## PUPIL RESPONSE / SIZE

1mm 2mm 3mm 4mm 5mm 6mm 7mm 8mm 9mm

Key: C-Closed B-Brisk F-Fixed SL-Sluggish

| | | Time: 1338 |
|---|---|---|
| Pupil Response | R | B |
| | L | B |
| Pupil Size | R | 4 |
| | L | 4 |

Body diagram annotations: Black eye; Scraped knee; Scraped knee

## VITAL SIGNS

| TIME | T | B. P. | P | R | O2 % | PAIN |
|---|---|---|---|---|---|---|
| 1345 | 98.4 | 139/75 | 93 | 17 | 100% | 8/10 |
| | | / | | | | |
| | | / | | | | |
| | | / | | | | |
| | | / | | | | |
| | | / | | | | |
| | | / | | | | |
| | | / | | | | |
| | | / | | | | |
| | | / | | | | |

## PARTICIPANTS

HEIGHT: WEIGHT: Lb

| NAME: | TITLE | INIT | NAME: | TITLE | INIT |
|---|---|---|---|---|---|
| N Oakes | RN | | V Sotelo | | LS |

| NAME: LAST, FIRST | | | | CDC # |
|---|---|---|---|---|
| Bowell James | | | | K04130 |
| DOB | AGE | TB CODE | INSTITUTION | HOUSING |
| 11/5/55 | 57 | 22 | CSP CORCORAN | 3B05-149L |

33

Saved 2013-02-14T17:20:59Z

California Correctional Health Care Services — CALIFORNIA STATE PRISON, CORCORAN

## TRIAGE AND TREATMENT AREA PROGRESS NOTE

| **NAME:** BOWELL, JAMES | **CDCR#:** H04180 | **DATE OF SERVICE:** 01/29/2013 |
|---|---|---|
| **DATE OF BIRTH:** 11/05/1955 | **HOUSING:** 03B005 1149001L | **PAROLE DATE:** |

TIME:

REASON FOR VISIT: Patient brought in for trauma evaluation after assault.

SUBJECTIVE: This is a 57-year-old male with no significant underlying medical illness except for chronic headache due to migraine presenting with a complaint of headache and facial pain along with pain across his chest wall. The patient reportedly was involved in an altercation and has been assaulted by another inmate. The patient was punched on his face. The patient did not lose consciousness but he was dazed. After he fell, he thinks he was punched and kicked on his facial area as well as chest wall for several times. The patient does remember coming to the hospital. There was no incident of nausea or vomiting. He currently denies any shortness of breath. The patient refused a neck brace or immobilization. The patient was ambulatory. The patient does not want any tetanus booster vaccination. Upon arrival to the Triage and Treatment Area (TTA), his main complaint is that he cannot hear clearly from his right ear. It feels like there is water inside of his ear.

CURRENT MEDICATION: Ergotamine caffeine tablet p.r.n.

**ALLERGIES: NO KNOWN DRUG ALLERGIES.**

OBJECTIVE: VITAL SIGNS: Blood pressure 130/75, pulse rate 92, respirations 12, temperature 98.4. Oxygen saturation 100% on room air. GENERAL: This is a middle-aged male, well nourished, well-built body habitus, sitting up, does not appear in any acute physical distress. HEENT: Normocephalic. There is no scalp hematoma or laceration. Patient does have right-sided periorbital ecchymosis with significant swelling in the infraorbital region with exquisite tenderness. There is no bony crepitus. Smooth mandibular angle without any bony defect. No temporomandibular joint tenderness. His nasal bones are not deformed. No septal hematoma. His pupils are reactive to light and accommodation. Extraocular muscles intact. Examination by otoscope: He has right-sided hemotympanum but there is no evidence of perforation. NECK: Supple. There is no midline cervical tenderness. Full range of motion. CHEST: Symmetrically expanded, nontender. There is no abrasion or ecchymosis over the chest wall. Lungs are clear to auscultation. HEART: Regular. S1 and S2 normal. No S3 gallop. ABDOMEN: Soft and nontender. Bowel sounds are positive. No organomegaly. EXTREMITIES: No edema, no clubbing, no cyanosis. There is a slight abrasion on his right-sided lower extremity. No knee joint swelling or limitation in motion. Pelvis is stable. No evidence of bony injury. NEUROLOGICAL: He is awake and alert, oriented x3. Cranial nerves II-XII intact. No motor deficit. No sensory deficit. Deep tendon reflexes 2+ bilaterally. No ataxia. No cerebellar sign.

ASSESSMENT AND PLAN: Status post altercation with facial trauma, rule out infraorbital wall fracture, rule out skull basal bone fracture. The patient will need emergent CT of the face to determine the exact location and extent of injury. The patient definitely will need ENT evaluation as our facility is not equipped with capability of doing stat CT or subspecialty backup. I think it is prudent to transfer the patient out to the offsite facility. I have contacted Mercy Hospital and discussed the case with Dr.Ahmad and the patient was accepted under his care. The patient will be transferred via state vehicle to the Mercy Emergency Room and upon arrival, his case will be resumed by Mercy ER physician and hospitalist thereafter.

EDUCATION:

FOLLOWUP:



Julian Kim, MD
Digitally authenticated on 2/4/2013 10:36 AM

JK/ksg D: 01/29/2013 03:07:00 pm T: 01/30/2013 02:16:04 pm Job #: 636193



DICTATED BY **Julian Kim, MD**
**BOWELL JAMES**

Saved 2013-02-14T17... **H04180**

J815339 J24523557
BOWELL,JAMES H04180 OPTOUT
J.5W J.501-01
REDDEN,WILLIAM

CHW CENTRAL CALIFORNIA
MERCY HOSPITAL BAKERSFIELD
2215 Truxtun Avenue
Bakersfield, California 93301

Pol #: H04180
DOB: 11/05/55
Admit Date: 01/29/13

**INMATE EMERGENCY ROOM REPORT**

DATE OF ADMIT: 01/29/2013

CDC number: H04180.

CHIEF COMPLAINT: Assaulted.

HISTORY OF PRESENT ILLNESS: The patient is a 57-year-old inmate who states that he was assaulted by what he thinks is 1 individual. He is not quite sure if he was hit with an object, punched and/or kicked, but has significant pain and swelling to the right side of his head and the right side of his face. He was concerned that he had some blood come out of his right ear and is having some muffled hearing on that side, as well as pain. He denies any specific neck pain. He is aware of a sore area on the anterior portion of his chest. There is no complaint of any shortness of breath. He also evidently fell to his knees and has abrasions on the anterior knees bilaterally, but states that he is able to move them and walk without difficulty. He is unaware of any focal neurologic deficit at this point. There are no other ongoing complaints.

PAST MEDICAL HISTORY: Otherwise negative.

PAST SURGERIES: None.

CURRENT MEDICATIONS: None.

ALLERGIES: NONE.

IMMUNIZATIONS: Unknown.

REVIEW OF SYSTEMS: As per HPI. ENT: As above. PULMONARY: Negative. CARDIAC: Negative. GASTROINTESTINAL: Negative. GENITOURINARY: Negative. INTEGUMENTARY: As above. HEMATOLOGIC/LYMPHATIC: Negative. IMMUNOLOGIC/ALLERGIC: Negative. MUSCULOSKELETAL: As above. ENDOCRINE: Negative. NEUROLOGIC: As above. PSYCHIATRIC: Negative.

The rest of review of systems reviewed and negative.

PERSONAL, FAMILY, AND SOCIAL HISTORY: The patient denies current tobacco, ethanol, and illicit substances as he is currently incarcerated.

PHYSICAL EXAMINATION: VITAL SIGNS: Temperature is 99.5, pulse 84, respirations 20, blood pressure is 119/67, SaO2 is 99% on room air. HEENT: Normocephalic. Patient does have significant abrasions and contusions to the right temporal, right zygomaticofacial area, and right maxillary face. There is some contusion in the lateral aspect of the right periorbital region. No bony deficits are appreciated at this point. No other sites of tenderness noted on the calvarium or on the contralateral face. Mandible is nontender. Right tympanic membrane

TREAT AS ORIGINAL



Saved 2013-02-14T17:26:05Z

J815339 J24523557 BOWELL,JAMES H04180 OPTOUT
01/29/13

does show some significant inflammation in the upper posterior quadrant of the tympanic membrane, but no true hemotympanum is noted. The left ear is clear. NECK: Nontender. Supple without mass, thyromegaly, lymphadenopathy, or meningismus. CHEST: The patient does have subjective tenderness to the anterior chest wall without visible sign of contusion or palpable deformity. LUNGS: Clear without wheeze, rales, or rub. CARDIOVASCULAR: Heart sounds regular without murmur or gallop. S1, S2 within normal limits. GASTROINTESTINAL: Abdomen is nondistended, visibly and palpably atraumatic. No mass, organomegaly, or CVA tenderness is appreciated. EXTREMITIES: Upper extremities within normal limits. Lower extremities, mostly normal except for minor abrasions to the anterior knees bilaterally, which show full active range of motion and demonstrate no laxity to exam. Distal neurovascular functions intact and full to all 4 extremities.
NEUROLOGIC: Cranial nerves 2-12 intact. Motor 5/5 all groups. Deep tendon reflexes are 2+ equal bilaterally. Cerebellar is intact to finger-to-nose testing.

EMERGENCY ROOM COURSE: The patient is seen and examined. CT scan of the brain and facial bones were obtained.

DIAGNOSTIC DATA: Chest x-ray, as per my interpretation, shows no active infiltrates. The bony structures are intact. No hemopneumothorax is identified, and cardiac silhouette is within normal limits. CT scan of the brain, read by the radiologist, shows normal examination. No intracranial injuries are noted. CT scan of the facial bones shows nondisplaced nasion fractures. No basilar skull fracture noted.

IMPRESSION:
1. Assaulted.
2. Multiple right temporal, right facial contusions and abrasions.
3. Nondisplaced nasion fracture.
4. Right otitis.
5. History of loss consciousness, possible concussion.

Consult was obtained from Dr. Ahmed, who states that he will admit the patient for observation and possible neurologic consult.

DISPOSITION: As per Dr. Ahmed's ultimate admission orders note to which I refer the interested reader for further review.

CONDITION ON ADMISSION: Stable.

JOB#833239
DATE DICT: 01/29/2013 23:15
DATE TRANS: 01/30/2013 07:10
WR:MEDQ/548893447

WILLIAM REDDEN, M.D.
DATE/TIME SIGNED:

R#:0130-0092

TREAT AS ORIGINAL





Saved 2013-02-14T17:26:05Z



J815339 J24523557
BOWELL,JAMES H04180 OPTOUT
J.5W J.501-01
ISLAM,SYED

CHW CENTRAL CALIFORNIA
MERCY HOSPITAL BAKERSFIELD
2215 Truxtun Avenue
Bakersfield, California 93301

Pol #: H04180
DOB: 11/05/55
Admit Date: 01/29/13

**HISTORY & PHYSICAL**

DATE OF ADMISSION: 01/29/2013

CHIEF COMPLAINT: Assault.

HISTORY OF PRESENT ILLNESS: The patient is a 57-year-old gentleman who states that he was assaulted. The patient came with pain and swelling on the right side of the head, and right side of the face. He was concerned about blood coming out of his right ear, and he states that his right ear is clogged up. He denies any significant neck pain. Denies any shortness of breath. The patient denies any focal weakness or numbness.

PAST MEDICAL HISTORY: Nothing significant.

ALLERGIES: AS PER CHART.

MEDICATIONS: As per chart.

SOCIAL HISTORY: Denies current tobacco, alcohol, or drug use. The patient is currently in prison.

REVIEW OF SYSTEMS: Otherwise negative.

EXAMINATION: VITAL SIGNS: The patient's blood pressure is 102/65, pulse is 73, respiratory rate 18, temperature 97.6, O2 saturation 99%. CHEST: Clear. No wheezing or crackles appreciated. CVS: S1, S2 audible. No murmur or rub appreciated. ABDOMEN: Soft, nontender. EXTREMITIES: No pedal edema. HEENT: Abrasions and bruise on the right side of the face.

INVESTIGATIONS: Shows chest x-ray with no obvious infiltrates. CT scan of the maxillary bones showed a nondisplaced nasion fracture. CT scan of the head without any hematoma.

ASSESSMENT/PLAN: A young gentleman with assault and nondisplaced nasion fracture. We will admit the patient for neuro checks. We will have an ENT consultation with Dr. Suesberry for nondisplaced nasion fracture and clogging of the right ear.

JOB#354978
DATE DICT: 01/30/2013 09:48

TREAT AS ORIGINAL



Saved 2013-02-14T17:26:05Z

J815339 J24523557 BOWELL,JAMES H04180 OPTOUT
01/29/13
DATE TRANS: 01/30/2013 10:13
SI:MEDQ/548954777

SYED ISLAM, M.D.
DATE/TIME SIGNED:

R#:0130-0193

TREAT AS ORIGINAL



Saved 2013-02-14T17:26:05Z

J815339 J24523557
BOWELL,JAMES H04180 OPTOUT
J.5W J.501-01
KITT,VICTOR

CHW CENTRAL CALIFORNIA
MERCY HOSPITAL BAKERSFIELD
2215 Truxtun Avenue
Bakersfield, California 93301

Pol #: H04180
DOB: 11/05/55
Admit Date: 01/29/13

**HISTORY & PHYSICAL**

DATE OF ADMISSION: 01/29/2013

Thank you for this ENT consultation. This 57-year-old white male inmate was supposedly assaulted yesterday. He was not sure of the mechanism of the assault. He apparently sustained bruising on the right lower lip, some blurred vision and some muffled hearing on the right side. He apparently had a slight nosebleed which abated spontaneously. Since admission, he was observed closely, and a CT of the facial bones confirmed a nondisplaced nasal fracture. Otherwise, all other facial bones are intact.

EXAMINATION: The ears, nose, and throat examination today revealed the right ear canal has a small tear on the skin. The eardrum is otherwise intact. Left ear canal and ear drum are intact. Nasal cavity is patent with no signs of septal subluxation. The maxilla and mandible are intact. There are moderate right lower lid skin bruises, and all extraocular muscle functions are intact, and his vision is clinically intact.

ASSESSMENT: I believe the patient can be discharged when stable and to be followed up as needed as an outpatient.

Again, thank you for this consultation.

JOB#355549
DATE DICT: 01/30/2013 12:23
DATE TRANS: 01/30/2013 13:05
VK:MEDQ/548990133

CC: DR. ISLAM

VICTOR KITT, M.D.
DATE/TIME SIGNED:

R#:0130-0301

TREAT AS ORIGINAL



Saved 2013-02-14T17:26:05Z

Patient's Age 57 Sex: (M) F

Referring Physician

☐ New Patient Visit ☐ Consultation
☐ Established ☐ Second Opinion

**Chief Complaint:**

**HPI:** Pt was hit c hard plastic on 1-29-13 to (R) side of face. Since than he had lost 90% of (R) ear hearing. had used Amoxil + ear drop x 7 days. It was leaking prior to ear drops x 4 days

**Review of Systems:**

**Past Medical History:**

| Hearing Loss | R | L |
|---|---|---|
| Duration | | |
| Progression | | |
| Tinnitus | | |
| Otitis | | |
| Discharge | | |
| Otalgia | | |
| Better Ear | | |
| Hearing Aid | | |

**Childhood Illnesses / Immunizations:**

**Allergies:**

**Surgical (Injuries):**

**Medications:**

**Family History:**

**Social History:**
Occupation:

**Habits:**
Tobacco: Pack/day ____x ____ yrs.
Alcohol:
Drugs:

**VICTOR V. KITT, M.D.**
2701 16th Street # A, Bakersfield, Ca. 93301
(661) 322-1258 Fax (661) 637-1112

EAR, NOSE, THROAT, & SINUS DISEASES
HEAD & NECK TUMOR SURGERY
BOARD CERTIFIED IN OTOLARYNGOLOGY

ORIGINAL

H0.

Patient Name: James Bowell DOB: 11/05/55

Dr: Victor Kitt, MD.

Date of Service: FEB 12 2013

H04180

Saved: 2013-02-14T17:26:05Z.

# AUDIOGRAM




DATE OF SERVICE: 2/12/13 SIGNATURE OF AUDIOLOGIST-ASSISTANT: [signature] (MA)

PATIENT NAME: James Bowell DOB: 11/5/55 DOCTOR: V. Kitt

H04180

**VICTOR V. KITT, M.D.**

2701 16th Street # A, Bakersfield, Ca. 93301
(661)322-1258 Fax (661)637-1112

EAR, NOSE, THROAT, & SINUS DISEASES
HEAD & NECK TUMOR SURGERY
BOARD CERTIFIED IN OTOLARYNGOLOGY



ORIGINAL

Saved 2013-02-14T17:26:05Z

| DATE | TIME | |
|---|---|---|
| 4/3/13 | | Optometry clinic |
| | | Head trauma Jan 2013 |
| | | Since then Pt stated he sees black line in left eye field of view |
| | | Last eye exam 7/17/12 |
| | | Uncorrected Dist VA OD 20/25 |
| | | OS 20/50 |
| | | Corrected Dist VA OD 20/20 |
| | | OS 20/20 |
| | | Ant seg – clean + clear |
| | | IOP – OD 11 mmHg OS 12 mmHg |
| | | 1% tropicamide instilled OU |
| | | OD clear media |
| | | OS Vitreous detachment causing floater |
| | | ~~No~~ no retinal tears or holes observed |
| | | Tx – No treatment needed at this time |
| | | Return as soon as poss. if symptoms change |
| | | [signature] OD |

INSTITUTION: COR

HOUSING UNIT

CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH

Barell, James
H04180
11/5/55

1. Disability Code:
☐ TABE score ≤ 4.0
☐ DPH ☐ DPV ☐ LD
☐ DPS ☐ DPH
☐ DNS ☐ DDP

2. Accommodation:
☐ Additional time
☐ Equipment ☐ SLI
☐ Louder ☑ Slower
☐ Basic ☐ Transcribe
☐ Other*

3. Effective Communication:
☑ P/I asked questions
☐ P/I summed information
Please check one:
☐ Not reached* ☑ Reached
*See chrono/notes

4. Comments: 1620-12.9

FSP41-0040 (Rev.12/10)

CDC 7230 (Rev 04/03)
STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

## $400,000 Settlement in Oklahoma Jail Failure to Protect Suit

On April 19, 2001, the insurer for the Garfield county jail in Oklahoma agreed to pay $400,000 to a former jail prisoner who was attacked and beaten by his cellmate. On April 26, 1998, Larry Thomas, then 58, was imprisoned in the Garfield county jail for five days to serve a sentence of driving while impaired. Thomas was attacked and severely beaten by his cellmate, Brett Overfelt. Thomas now resides in a nursing home and he suffered long term, permanent injury.

Thomas filed suit in federal court claiming that jail officials failed to protect him from attack. The county's insurance company settled the case shortly before it was scheduled to go to trial by paying Thomas $400,000 in damages. In September 2000, Overfelt pleaded no contest to four felony counts of assault related to his attack on Thomas and was sentenced to five years in prison.

The Garfield county jail is usually overcrowded and lacks segregation space. The jail has also been cited for repeated violations by state jail inspectors. Attorney Mark Hammons represented Thomas. In a statement to media, Hammons said another of his clients, Jeremy Birchfield, had settled a lawsuit for $150,000 over injuries he sustained while in the jail. On July 1, 2001, the county lost its liability insurance. ■

Source: *The Oklahoman*

## $20,000 Settlement in Montana Jail Strip Search

Eric Lynn agreed to accept a $20,000 out-of-court settlement after complaining that Missoula County policemen violated his civil rights by conducting an improper strip search at the County Detention Center.

Lynn, a University of Montana senior, was among a group that protested an excessive police presence during a July 2000 Hell's Angels' visit to Missoula. After conflicts broke out, Lynn was arrested and taken to the Detention Center. There, Lynn alleged, policemen violated his civil rights by humiliating, intimidating, and degrading him while he was in jail, as well as strip searching him without probable cause.

On April 5, 2001, Lynn filed suit against the Missoula County Sheriff, Undersheriff, nine policemen, and the county itself. On September 21st, the county agreed to settle all claims for $20,000 and further agreed to make changes in their strip-search policy.

Missoula County's previous policy allowed strip searches whenever a prisoner was booked for a stay in jail. The new policy provides that no strip search may be conducted unless there is a "reasonable suspicion of contraband."

Alan Blakley, Lynn's attorney, had initially sought an official apology but dropped that request when the county offered to retrain employees on the new strip-search policy. Lynn said that while the county did not offer an apology, he considers the change in policy and the $20,000 as a positive gesture. He added that he might use the settlement money to pay off his student loans. ■

Sources: *Montana Kaimin*, *University Wire*

# Texas Prisoner Wins $130,000 from Jail for Poor Care, Beatings

A Texas state prisoner won $130,000 in damages after it was shown that he was denied medical care and not protected from violent prisoners while held at Williamson County Jail near Austin.

Martin DiCarlo, 39, filed suit in U.S. District Court under 42 USC §1983 where he alleged that in early 1997 he received inadequate medical care while in jail. After another prisoner broke his jaw, DiCarlo was sent to Saint David's hospital for surgery. Following surgery, his jaw was packed with gauze and wired shut. He was then returned to Williamson County Jail.

Although two post-operative appointments at the hospital were scheduled, the jail failed to send DiCarlo to either. A few days after surgery, he was shipped to the Texas prison system with the gauze and wires still in place. Jail workers failed to inform the prison system staff that DiCarlo required follow-up care.

After arriving at state prison, DiCarlo's requests for post-operative care were ignored until he woke up a few weeks later in a pool of blood with the rotting gauze still packed in his jaw. Two additional surgeries were then required to repair the damage and DiCarlo lost several teeth.

DiCarlo also complained that Robert Baker, a former jail captain, routinely sent troublesome prisoners to a special cellblock, the "captain's tank," which housed assaultive prisoners who took pleasure from beating those who had filed grievances or complained about jail conditions. In November 1996 after filing a grievance asking for more access to the jail's law library, DiCarlo was sent to the captain's tank where he was assaulted and had his food stolen by other prisoners.

DiCarlo's case went to trial in November 2001. When defense counsel moved to dismiss saying there was no factual basis for DiCarlo's claims, U.S. District Judge Sam Sparks denied the motion saying, "Either this was the most negligently run jail in the state or there's ample evidence for a judgment against all defendants."

A five-person jury agreed and awarded DiCarlo $130,000 in actual and punitive damages. DiCarlo may have scant opportunity to enjoy his new wealth, however. A repeat offender with a dismal history of prior felonies, he is serving a life sentence at Texas' Retrieve State Prison after being convicted of firearms, burglary, and theft charges. See *DiCarlo v Richards*, USDC No. A-99-CA-053-SS (WD TX 2001). ■

Sources: *Austin American-Statesman*; correspondence with DiCarlo; deposition of Nelda Baker (former jail nurse); correspondence from David Brenner (DiCarlo's counsel).

HISTORY; ANCILLARY LAWS AND DIRECTIVES

**Amendments:**

**1994.** Act Sept. 13, 1994, substituted "under this title" for "not more than $1,000".

**§ 224. Bribery in sporting contests**

(a) Whoever carries into effect, attempts to carry into effect, or conspires with any other person to carry into effect any scheme in commerce to influence, in any way, by bribery and sporting contest, with knowledge that the purpose of such scheme is to influence by bribery that contest, shall be fined under this title, or imprisoned not more than 5 years, or both.

(b), (c) [Unchanged]

(As amended Sept. 13, 1994, P. L. 103-322, Title XXXIII, § 330016(1)(L), 108 Stat. 2147.)

HISTORY; ANCILLARY LAWS AND DIRECTIVES

**Amendments:**

**1994.** Act Sept. 13, 1994, in subsec. (a), substituted "under this title" for "not more than $10,000".

## CHAPTER 12. CIVIL DISORDERS

**§ 231. Civil disorders**

(a)(1)-(3) [Unchanged]

Shall be fined under this title or imprisoned not more than five years, or both.

(b) [Unchanged]

(As amended Sept. 13, 1994, P. L. 103-322, Title XXXIII, § 330016(1)(L), 108 Stat. 2147.)

HISTORY; ANCILLARY LAWS AND DIRECTIVES

**Amendments:**

**1994.** Act Sept. 13, 1994, in subsec. (a), in the concluding matter, substituted "under this title" for "not more than $10,000".

## CHAPTER 13. CIVIL RIGHTS

Section

248. Freedom of access to clinic entrances

HISTORY; ANCILLARY LAWS AND DIRECTIVES

**Amendments:**

**1994.** Act May 26, 1994, P. L. 103-259, § 4, 108 Stat. 697 (effective on enactment and applicable as provided by § 6 of such Act, which appears as 18 USCS § 248 note) amended the analysis of this chapter by adding item 248.

Act Sept. 13, 1994, P. L. 103-322, Title XXXIII, § 330023(1), 108 Stat. 2150 (effective 5/26/94 as provided by § 330023(b) of Act Sept. 13, 1994, which appears as a 18 USCS § 248 note), substituted item 248 for one which read: "248. Blocking access to reproductive health services".

**§ 241. Conspiracy against rights**

If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or

If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured—

They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

(As amended Sept. 13, 1994, P. L. 103-322, Title VI, § 60006(a), Title XXXII, Subtitle A, § 320103(a), Subtitle B, § 320201(a), Title XXXIII, § 330016(1)(L), 108 Stat. 1970, 2109, 2113, 2147.)

HISTORY; ANCILLARY LAWS AND DIRECTIVES

**Amendments:**

**1994.** Act Sept. 13, 1994, in the first undesignated para., substituted "person in" for "inhabitant of" and, in the third undesignated para., substituted "under this title" for "not more than